UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
BONITA FABRICS, INC.,

        Plaintiff,

    -against-                                  Case No.12-misc-408

KIRAT S. ANAND, AN INDIVIDUAL, DBA
KAS NEW YORK,

        Defendant.
----------------------------------------------------------------x

## DECLARATION OF KATHRYN S. MARSHALL IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THIS MISCELLANEOUS PROCEEDING AND TO QUASH SUBPOENAS

Kathryn S. Marshall, of counsel to plaintiff's attorney in the California action upon which this miscellaneous proceeding is based, declares under the penalties of perjury as follows:

1. I am an attorney licensed to practice in the State of California. I am Of Counsel with the firm of Wasserman, Comden, Casselman & Esensten L.L.P., attorneys of record for Plaintiff Bonita Fabrics, Inc. ("Bonita" or plaintiff) in a California action, filed in the United States District Court, Central District of California, entitled Bonita Fabrics, Inc. v. Kirat Anand, an individual, dba KAS New York, Case No. CV11-07594-PSG (JEMx). The judgment that was entered in that California action was thereafter registered in the Southern District of New York and was assigned case number 12-misc-408.

2. I was the attorney principally responsible for the handling of this matter in the California action. I am personally familiar with the facts set forth in this declaration and if called as a witness I could and would competently testify to the matters stated herein. I submit

1

this declaration in opposition to defendant's motion to dismiss the proceeding that was registered in this court after judgment had been rendered against defendant in the California action and to quash subpoenas that have been issued in New York to enforce the judgment against defendant.

### KAS NEW YORK INFRINGES ON PLAINTIFF'S COPYRIGHTED DESIGN, FAILS TO COMPLY WITH BONITA'S CEASE AND DESIST LETTER AND BONITA INSTITUTES THIS ACTION

3. In May 2011, my office became aware that a company named KAS NEW YORK was selling garments that infringed Bonita's Design No. 50653, which design is the subject of a Federal Copyright Registration dated April 5, 2007, and assigned Registration Number VA 1-634-587. Bonita prefers to resolve such disputes short of litigation and on May 27, 2011, I sent a cease and desist letter to KAS NEW YORK ("KAS"), a true and correct copy of which is attached hereto as Exhibit "1," demanding that KAS cease its infringement and provide documentary evidence of its supply source, sales, customers and profits.

4. By letter dated June 7, 2011, a true and correct copy of which is attached hereto as Exhibit "2," Mr. Kirat S. Anand ("Anand") responded to the cease and desist letter on behalf of KAS, but failed and refused to provide any of the information requested. On July 13, 2011, I sent another letter to KAS/Anand requesting assurances that the infringement would cease and requesting information regarding KAS/Anand's sales of the infringing garments. A true and correct copy of my July 13, 2011 is attached hereto as Exhibit "3." KAS/Anand failed to respond to my July 13, 2011 letter and Bonita had no choice but to file the present action. Based on our research, at that time we believed that KAS NEW YORK was a New York corporation and that entity was named as the original defendant in this action.

5. Pursuant to FRCP 4(e)(1) and C.C.P. 415.30, on September 23, 2011, my office

2

served the original Complaint, Summons and related documents in this action on KAS NEW YORK by certified mail, return/receipt requested. The Return Receipt postcard was signed by an individual at KAS NEW YORK and returned to us on or about September 26, 2011. Attached hereto as Exhibit "4" is my September 23, 2011 cover letter that accompanied the service and the Return Receipt postcard.

### BONITA ATTEMPTS IN GOOD FAITH TO SETTLE THIS LITIGATION, BUT KAS/ANAND EMPLOY THREE SEPARATE ATTORNEYS WHO SPEND OVER SIX MONTHS PLAYING 'HIDE-THE-BALL' WITH RELEVANT INFORMATION

6. On October 6, 2011, a New York attorney named Rohit Sabharwal, who is also the attorney who has recently filed defendant's motion to dismiss and quash, contacted me by email on behalf of KAS/Anand and advised me that KAS/Anand was interested in settling this litigation and also advised me that KAS was not a legal entity, but instead that Dani II, Inc. should be the defendant. [Unless requested by the Court, such confidential settlement communications will not be presented to the Court in connection with this Opposition.] By email dated October 7, 2011, I responded to Mr. Sabharwal and advised him that I would amend the Complaint if he provided proof of the proper entity to be named and asked that he provide me with such information as well as the documentary evidence of sales/profits previously requested. Mr. Sabharwal refused to provide the requested information, but throughout the month of October 2011, Mr. Sabharwal continued to send a number of threatening emails to me which contained incorrect legal and factual statements requiring my response. I spent a significant amount of time researching and responding to Mr. Sabharwal's emails, which involved the procedural and substantive merits of the case.

7. On October 26, 2011, I sent Mr. Sabharwal and Mr. Anand a letter advising them

3

that KAS has been served with the Complaint but failed to appear and that Bonita would take a default if no responsive pleading was filed. A true and correct copy of my October 26, 2011 letter is attached hereto as Exhibit "5."

8. In November 2011, I was contacted by a California attorney named Peter Chang with the law firm of Black, Chang & Hamill LLP in San Francisco and Mr. Chang advised me that he now represented KAS/Anand. Mr. Chang advised me that KAS was not a legal entity and he said he would ask Mr. Anand to provide proof of the proper entity as well as documentary evidence of sales, customers and profits. Based on Mr. Chang's statements, Bonita held off on taking a default, so as not to burden the Court. I had several email and phone conversations with Mr. Chang, who ultimately told me that his client, Mr. Anand, was not willing to provide me with any information.

### BONITA AMENDS THE COMPLAINT TO NAME MR. ANAND INDIVIDUALLY AND MR. ANAND EVADES SERVICE AND ENGAGES IN OTHER BAD FAITH LITIGATION TACTICS

9. In November 2011, my office then conducted a new and more exhaustive search of New York public records as well as other sources and learned that KAS NEW YORK was not a legal entity and also learned that no person or entity had filed a fictitious name statement for KAS NEW YORK as is required by New York law. My office discovered that Mr. Anand personally was operating KAS, as evidenced by KAS's website which has a page entitled "Who is Kas?" This page explains that KAS was named after, created by, founded by, launched by and is operated by Kirat S. Anand. Attached hereto as Exhibit "6" is a true and correct copy of a print out from the KAS's website. Attached hereto as Exhibit "7" is a true and correct copy of a print out from Mr. Anand's "LinkedIn" page in which Mr. Anand own user submitted profile lists him

4

as the "Designer and Owner at KAS New York." Finally, several retailers who sold the infringing garments advised me that Mr. Anand was the manufacturer and wholesaler of the infringing garments.

10. Based on such information, on November 17, 2011, my office filed a First Amended Complaint naming Mr. Anand as an individual. My office then attempted to serve Mr. Anand by certified mail/return receipt requested, but such envelope (a true and correct copy of which is attached hereto as Exhibit "8") which was sent to the same address where mail for KAS was previously accepted, was returned to my office as "refused." My office thereafter hired a process server to personally serve Mr. Anand in New York, but he evaded service. Eventually, on December 22, 2011, we were finally able to serve Mr. Anand by substituted service.

11. On January 6, 2012, I received a letter from Staci Riordan at Fox Rothschild LLP in Los Angeles, a third attorney representing Mr. Anand in connection with this matter. [As Ms. Riordan's letter and our subsequent communications were confidential settlement communications, they are not attached to this declaration, but can be submitted to the Court upon request.] For the next three months, Ms. Riordan and I engaged in protracted communications in which I set forth in great detail the basis for my client's legal and factual claims and the reasons why her client's "defenses" were without merit. Ms. Riordan told me that she was working with her client to get us the sales information requested, but that she needed more time. Based on her assurances, Bonita did not at that time seek to have a default entered. Ultimately, however, Ms. Riordan advised me that her client was unwilling to reveal the names of his supplier or his customers or provide the back-up sales documents.

12. I advised Ms. Riordan that Bonita would be able to discover Mr. Anand's

5

customers, supplier and sales information during the course of the litigation at which point it became clear that Mr. Anand was refusing to respond to the First Amended Complaint as a way to prevent Bonita's ability to conduct discovery regarding this infringement and to prevent Bonita from obtaining admissible evidence that could be used to establish the profits defendant's and his customers reaped by virtue of the infringement.

13.     On March 2, 2012, I received the Order to Show Cause ("OSC") issued by the California court indicating that the First Amended Complaint would be dismissed unless a default was requested. By email dated March 2, 2012 (a true and correct copy of which is attached hereto as Exhibit "9"), I provided Ms. Riordan notice of the court's OSC and also advised her that I would be filing default papers in the next week.

14.     Despite being given notice of the OSC and Bonita's intention of seeking a default, defendant Anand did not respond to the First Amended Complaint within the time permitted by law. A clerk's default was entered by the California court on March 15, 2012, a copy of which is attached hereto as Exhibit "10." By email dated March 16, 2012, I advised Ms. Riordan that the default had in fact been entered by the court and that Bonita would file an application for entry of default judgment. I did not receive any response to this email.

15.     By letter dated June 19, 2012, defendant purported to appear in the California action by sending a personal letter to the Judge presiding in that case requesting a continuance of the default hearing. A true and correct copy of defendant's June 19, 2012 letter and the Court's rejection are attached hereto as Exhibit "11."

16.     On June 20, 2012, the court in California granted plaintiff's Request for Entry of Default Judgment and found that good cause existed for the entry of a judgment against

6

defendant in the amount of $20,000, together with pre-judgment and post-judgment interest as well as attorneys fees in the amount of $7,080.50, costs of suit in the amount of $682.50, and the court also issued a permanent injunction against defendant.

## DEFENDANT HAS AVAILED HIMSELF OF THE PRIVILEGE OF DOING BUSINESS IN CALIFORNIA

17.     Defendant's infringing dresses at issue in this action were offered for sale on at least four separate websites, including www.swirl.com by Daily Candy, www.shopstyle.com. www.edressme.com, and www.ruelala.com. Most significantly from a jurisdiction standpoint, www.swirl.com was operated by Daily Candy Commerce, LLC, a company based in Los Angeles, California. KAS does not deny that it sold the infringing garment at issue in this action to Daily Candy Commerce, LLC. In fact, Defendant submitted to the California court a copy of the KAS invoice for sale of the infringing garment at issue to Daily Candy Commerce, LLC, with an address of 12200 W. Olympic Blvd, Los Angeles, CA 90064 (Ex. "11" hereto). See also, Exhibit "12" which is a true and correct copy of a printout of Business Week website showing that Daily Commerce, LLC operates www.swirl.com and is based in Los Angeles, California.

18.     Defendant's garments are sold in dozens of stores in California, including the California-based boutique Fred Segal, the high end Beverly Hills, California boutique Scoop, as well as large department stores located throughout California including Neiman Marcus and Bloomingdale's.

19.     Attached hereto as Exhibit "13" is a true and correct copy of a printout of an internet advertisement seeking an intern that was posted by KAS. In the ad, KAS concedes that it sells its garments to Fred Segal, a boutique located in Los Angeles, California as well as

Scoop, a boutique located in Beverly Hills, California. Attached hereto as Exhibit "14" is a true and correct copy of a printout from Fred Segal's website which shows the address of its flagship store in Santa Monica, California. Attached hereto as Exhibit "15" is a true and correct copy of a printout from Scoop's website which shows the address of its store in Beverly Hills, California.

20. Attached hereto as Exhibit "16" is a true and correct copy of a printout from Neiman Marcus's website offering defendant's garments for sale and also a printout showing that Neiman Marcus has 13 store locations in California. Attached hereto as Exhibit "17" is a true and correct copy of a printout from Bloomingdales' website offering defendant's garments for sale and also a printout showing that Bloomingdale's has 10 stores in California.

21. Defendant had (and may still have) a sales-representative located in Los Angeles, California and defendant has exhibited and sold goods at the Los Angeles, California trade show Designers and Agents. Attached hereto as Exhibit "18" is a true and correct copy Kirat Anand's Wikipedia page in which he admits that he is the owner and operator of KAS and that KAS has participated in trade shows in Los Angeles, including the Designer and Agents trade show. Attached hereto as Exhibit "19" is a true and correct copy of a printout of the website from a sales representative in Los Angeles, Corina Collections, which has a news release dated 6/1/2007 that her Los Angeles showroom will feature New York's KAS Designs.

## CONCLUSION

22. I have spent over 5 hours researching and drafting this opposition. Pursuant to 17 U.S.C. § 505, as the prevailing party, Bonita, is entitled to recover its attorneys fees in this action. My hourly rate is $325.00 and Bonita has therefore incurred $1,625.00 in attorneys fees in connection with this opposition. The hourly rates charged in this action are the normal and customary rates I charge and these are the rates that we have received from other courts in their

8

awarding of attorneys fees. Accordingly, Bonita seeks an award of attorneys fees in being forced to oppose this frivolous motion.

23.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
April 4, 2013

_____
KATHRYN S. MARSHALL